### STATE v. GUS POTHAKOS.[1]

March 4, 1927.

No. 25,878.

**Conviction for arson sustained.**
> The evidence warranted the jury in finding defendant guilty of arson in the third degree.

Arson, 5 C. J. p. 580 n. 16.

Defendant appealed from an order of the district court for Hennepin county, Baldwin, J., denying his motion for a new trial. Affirmed.

*C. J. Laurisch,* for appellant.

*Clifford L. Hilton,* Attorney General, *Floyd B. Olson,* County Attorney, and *William G. Compton,* Assistant County Attorney, for the state.

[1]Reported in 212 N. W. 598.

HOLT, J.

Defendant was convicted of third degree arson and appeals.

Of the assignments of error the one argued, and the only one upon which any contention for a new trial could be based, is the sufficiency of the evidence to sustain the verdict.

The fire occurred between one and half past one the morning of December 21, 1925, in a store building on the corner of Lake street and Bryant avenue, Minneapolis, leased to defendant and in which he conducted a confectionery and fruit store. The fire was in the basement and was confined almost wholly to a small storeroom therein. The firemen, who responded to the alarm and put out the fire, because of the pronounced odor of kerosene notified the fire marshal and an investigation resulted in the arrest and indictment of defendant. Aside from the odor testified to by the firemen and others present soon after the fire, part of the watersoaked debris within the partially destroyed storeroom was put in sealed containers and submitted to a chemist for analysis. His findings were positive that kerosene was a material constituent of the debris. From the quantity analyzed he estimated that a pint of kerosene could be extracted out of fifty pounds of the mass from which the sample was taken. There is nothing in the record to account for the use or presence of kerosene for any legitimate purpose upon the premises. Such quantity of unconsumed kerosene in the watersoaked remnants of the fire is rather convincing that it was set. Defendant admitted that he was the last person to leave the premises about half an hour before the fire was discovered. The corpus delicti and defendant's connection therewith, we think, have been proven to such an extent that an appellate court is not justified in holding as a matter of law that defendant was not proven guilty of the crime charged beyond a reasonable doubt.

Persons are usually actuated by some motive in the commission of crime. And the state as a rule attempts to show the motive of the accused. A frequent motive for arson is of course the insurance that may result if the crime can be accomplished so as to escape detection. A careful reading of the record in the instant case leaves the conviction that the proof of motive is not as satisfying as a

court might wish to have before approving a verdict of guilt. True, there was overinsurance if the valuation of defendant's property was as testified to by the state's witnesses, even if defendant thought the first policy was canceled. But, if the testimony he adduced of what he paid for the equipment and stock, the large increase of the latter, and that he directed the first policy to be canceled before he took out the second was believed, there was no overinsurance, and he could have had no financial motive in causing a fire just as he approached the most profitable period of the business—the holiday trade. Although defendant introduced documentary proof that he had borrowed $1,500 from an uncle to buy the business and had given the seller his note for $500 to pay a balance, the amount of the purchase price, which he and the seller testified was $4,600 or $4,700, rests on oral testimony. The bill of sale was not at the trial, nor was the attorney who drew it called as a witness, who in all probability would have known whether $2,300 in cash was actually received by the seller and receipts therefor, now claimed destroyed in the fire, were then made out by him. These and other matters were for the jury to solve depending on the credence given the different witnesses.

But even though the proof of the presence of kerosene and the inference of incendiarism therefrom are so strong and persuasive, one reading this record cannot help asking the question why the fire marshal's force, suspecting arson from the first, took no greater care than was done here to eliminate electricity as a possible cause of the fire. However upon the whole record we must hold the verdict sustained.

The order is affirmed.